UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STEPHEN KENT JUSICK, ARIES DE LA CRUZ, )
and JUSTIN TAYLOR                       )
                                        )           **COMPLAINT**
                                        )
                  Plaintiffs,           )           **ECF CASE**
                                        )
      -against-                         )
                                        )
THE CITY OF NEW YORK; MICHAEL           )           **JURY TRIAL**
BLOOMBERG, Mayor of the City of New York; )         **DEMANDED**
RAYMOND KELLY, New York City Police     )
Commissioner; STEPHEN HAMMERMAN,        )
Former Deputy Commissioner for Legal Matters, )
New York City Police Department; DAVID  )
COHEN, Deputy Commissioner for Intelligence, )
New York City Police Department; THOMAS )
DOEPFNER, Assistant Deputy Commissioner for )
Legal Matters, New York City Police Department; )
NYPD LIEUTENANT DANIEL ALBANO; NYPD )
DEPUTY INSPECTOR KERRY SWEET, NYPD )
Legal Bureau Executive Officer; NYPD Legal )
Bureau Senior Counsel RUBY MARIN-JORDAN )
NYPD LEGAL BUREAU SUPERVISOR(S) AT )
PIER 57; JOSEPH  ESPOSITO, Chief of the New )
York Police Department; THOMAS GRAHAM, )
Commander, Disorder Control Unit, New York City )
Police Department; JACK MCMANUS, Assistant )
Chief, New York City Police Department; BRUCE )
SMOLKA, former Commander, Patrol Borough )
Manhattan South, New York City Police   )
Department; TERENCE MONAHAN, Assistant  )
Chief of the Bronx Borough Command; JOHN J. )
COLGAN, Assistant Chief, New York City Police )
Department; JAMES P. O'NEILL, Deputy Chief, )
New York City Police Department; POLICE )
SERGEANT RAYMOND NG, Shield No. 92286; )
POLICE OFFICER ERIC RIVERA, Shield No. )
15811; POLICE OFFICER MARK ALBERTSEN, )
Shield No. 04385; JOHN DOES; RICHARD    )
ROES; HUDSON RIVER PARK TRUST,          )
                                        )
                  Defendants.           )
-------------------------------------------------------------X

**PRELIMINARY STATEMENT**

1.      This is a civil rights action in which the plaintiffs STEPHEN KENT

JUSICK, ARIES DE LA CRUZ, and JUSTIN TAYLOR seek relief for the defendants'

violation of their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983,

by the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth

Amendments, and by the laws and Constitution of the State of New York. The plaintiffs

seek damages, both compensatory and punitive, affirmative and equitable relief, an award

of costs and attorneys' fees, and such other and further relief as this court deems

equitable and just.

**JURISDICTION**

2.      This action is brought pursuant to the Constitution of the United States,

including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42

U.S.C. §1983. Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C.

§§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of

the plaintiffs' constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction,

pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties

that are so related to claims in this action within the original jurisdiction of this court that

they form part of the same case or controversy.

**JURY TRIAL DEMANDED**

4.      Plaintiffs demand a trial by jury on each and every one of their claims as

pleaded herein.

**VENUE**

5.     Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## **PARTIES**

6.     Plaintiff STEPHEN KENT JUSICK is a citizen of the United States, and at all times relevant herein resided in the state of New York.

7.     Plaintiff ARIES DE LA CRUZ is a citizen of the United States, and at all times relevant herein resided in the state of New York.

8      Plaintiff JUSTIN TAYLOR is a citizen of the United States, and at all times relevant herein resided in the state of New York.

9.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

10.    Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued in both his individual and official capacities.

11.    Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the

creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

12.    STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

13.    DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

14.    THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

15.    NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

16.    NYPD DEPUTY INSPECTOR KERRY SWEET,  is and was at all times

relevant herein a Deputy Inspector in and the Executive Officer of the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17.    RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in his official capacity.

18.    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. They are sued individually and in his official capacity.

19.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

20.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs

complained of herein.  He is sued individually and in his official capacity.

21.     Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He is sued individually and in his official capacity.

22.     Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.     He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.  He is sued individually and in his official capacity.

23.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein.  He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period.  He is sued individually and in his official capacity.

24.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the

senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

25.     Defendants MONAHAN, O'NEILL, NG, RIVERA, ALBERTSEN and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants MONAHAN, O'NEILL, NG, RIVERA, ALBERTSEN and JOHN DOES are sued individually and in their official capacity.

26.     Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL and RICHARD ROES are and were at all times relevant herein duly appointed and acting supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, responsible for the training, retention, supervision, discipline and control of police officers under their command. Said individual defendants are and were

at all times relevant herein acting under color of state law in the course and scope of their duties and functions as supervisory officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL and RICHARD ROES are sued individually and in their official capacity.

27.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at all times relevant herein a public benefit corporation, organized and existing pursuant to the laws of the State of New York. Defendant HUDSON RIVER PARK TRUST assumes the risks incidental to the maintenance and use of its structures and the employment of its employees as said risk attaches to the public consumers of the services provided by the HUDSON RIVER PARK TRUST and those who enter and remain within its structures. Officials of HUDSON RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National Convention (RNC). Said officials are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officials of defendant HUDSON RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

28.    Plaintiff STEPHEN KENT JUSICK peacefully and lawfully exercised his rights to free speech and assembly during the period of the Republican National Convention ("RNC"). He also wished to enjoy the period of the RNC in peace and good-feeling.

29.    ARIES DE LA CRUZ is a certified Emergency Medical Technician, and was serving as a medic on August 29, 2004. He was a humanitarian observer, who wished to provide assistance on this date to those in need of medical care.

30.    Plaintiff JUSTIN TAYLOR also peacefully and lawfully exercised his rights to free speech and assembly during the period of the RNC. He also wished to enjoy the period of the RNC in peace and good-feeling.

31.    Plaintiffs were arrested during one of the many mass-arrests conducted by the NYPD during the period of the RNC, arrests made by the NYPD without probable cause or individualized suspicion of criminal activity.

32.    On August 29, 2004, plaintiff STEPHEN KENT JUSICK went to the New York Public Library at 42nd Street, and from there walked to Times Square with a group of people.

33.    After Mr. JUSICK and the group arrived at Times Square and had been there for a period of time, police officers there became very aggressive. The police officers began to arrest some of the people present there. Some of the police officers were using horses in an aggressive fashion to move people who were present there.

34.    Defendants O'NEILL and MONAHAN were commanding officers in the area responsible in whole or in part for the creation of these hostile conditions.

35.    Plaintiff JUSICK decided to leave Times Square due to the arrests and the increasingly hostile police behavior.  He exited Times Square to the west, walking with a number of other people, and went south on Eighth Avenue. Mr. JUSICK hoped to leave the area entirely.

36.    When Mr. JUSICK and the other people arrived at approximately 45th Street and Eighth Avenue, they were stopped by JOHN DOE police officers and arrested.

37.    Plaintiff JUSTIN TAYLOR went to the Times Square area on August 29, 2004 to participate in protest activity he had heard about.  When he arrived in the Times Square area, however, he did not find the protest activity that he had been looking for.

38.    Mr. TAYLOR saw a friend of his among the crowd, and she was crying. He went over to greet and comfort her, and decided to leave the area with her.  He exited Times Square with her to the west, walking with a number of other people, and went south on Eighth Avenue. Mr. TAYLOR hoped to find a subway and leave the area entirely.

39.    When Mr. TAYLOR and the other people arrived at approximately 45th Street and Eighth Avenue, they were stopped by JOHN DOE police officers and arrested.

40.    On August 29, 2004, plaintiff ARIES DE LA CRUZ also went to the New York Public Library at 42nd Street.  He became separated from the group of people who were proceeding to Times Square, and made his way to Times Square separately.

41.    After plaintiff DE LA CRUZ was also in Times Square for a period of time, he also observed police officers there become very aggressive.

42.    Plaintiff DE LA CRUZ also decided to leave Times Square because of the increasingly hostile police behavior.  He made his way to Eighth Avenue, where he and a small number of other medics gathered across the street from where Plaintiffs JUSICK and TAYLOR were being detained by the NYPD along with the others.  Plaintiff DE LA CRUZ had heard that one of the arrestees there was suffering the effects of asthma, and wanted to assist that person if he could.

43.    A commanding officer told plaintiff DE LA CRUZ and the other medics who were across the street from where the group, or groups, were detained, to disperse. Plaintiff DE LA CRUZ and the other medics obeyed this dispersal order and walked approximately one block to the south.  Plaintiff DE LA CRUZ then heard the commanding officer who had ordered him to disperse direct subordinate JOHN DOE police officers to place plaintiff DE LA CRUZ and the other medics with him under arrest.  These JOHN DOE police officers roughly placed plaintiff DE LA CRUZ under arrest, along with the other medics who he was with.

44.    Plaintiff DE LA CRUZ and the medics were taken by the JOHN DOE police officers from the place where they were arrested and brought across the street to where plaintiffs COBURN, THOMAS-MELLY, BARRON, JUSICK and the others were being detained.

45.    Plaintiffs and the group were not free to leave this location, and the police officers surrounded them with metal barriers.

46.    Plaintiffs were told to kneel on the concrete by the JOHN DOE police officers present there.

47.    On information and belief, all those present there were handcuffed behind

their backs and all, except plaintiff DE LA CRUZ and the medics, were placed into MTA

City Buses by NYPD officers for transport to Pier 57. The driver of the bus that took

Plaintiff JUSICK and others to Pier 57 subjected Mr. Jusick and others on the bus to

verbal abuse, telling them, inter alia, that they had no rights.

48.      Plaintiff DE LA CRUZ and the medics were handcuffed behind their

backs and placed by NYPD officers into a van for transport to Pier 57. The van was

driven by defendant RIVERA, who was assigned as plaintiff DE LA CRUZ's arresting

officer. On information and belief, defendant RIVERA was assigned as the arresting

officer for all of the medics arrested.

49.      Defendant NG was assigned as the arresting officer for plaintiff

STEPHEN KENT JUSICK.

50.      Defendant ALBERTSEN was assigned as the arresting officer for plaintiff

JUSTIN TAYLOR.

51.      The decision to arrest the people at 45th Street and 8th Avenue was made

by Defendant MONAHAN, without justification or probable cause, and without

individualized knowledge that any of the arrestees had engaged in any illegal conduct.

This decision to engage in the mass arrests at 45th Street and 8th Avenue was

communicated to lower-ranking NYPD officers, who effected those orders.

52.      Defendant MONAHAN is responsible in whole or in part for creating the

conditions in the vicinity of 44th / 45th Street and 8th Avenue that led to the false arrest of

plaintiff DE LA CRUZ and the other medics who were near him.

53.      Defendants RICHARD ROES were among the NYPD Commanding

Officers who also exercised command responsibility at 45th Street and 8th Avenue, and

participated directly and/or in their capacity as supervisors in making the wrongful mass arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers. They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.

54.    Plaintiffs were taken to Pier 57, a former bus depot that was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

55.    Pier 57 is owned by and/or under the control of defendant HRPT.

56.    Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

57.    On information and belief, all of the arrestees from 45th Street and Eighth Avenue, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

58.    The conditions at Pier 57 were atrocious. The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating. The floor of Pier 57 was caked with a dark grimy substance that spread to the clothing and bodies of those detained therein. There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier. On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals

which the City and HRPT knew, or should have known, were present there. During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

59.     Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO, MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests.  On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

60.     Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances.  In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

61.     The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system.  The City insisted

on fingerprinting all RNC detainees in contravention of New York State Law, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines. On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives. Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork. Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street. All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

62.     After their detention at Pier 57, further callous and unreasonable treatment and conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

63.     Plaintiff STEPHEN KENT JUSICK was subjected to effeminizing comments by the JOHN DOE defendants at Central Booking when his "mug shot" photographs were being taken.

64.     On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

65.     During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

66.     Plaintiff STEPHEN KENT JUSICK was released after approximately 20 hours in custody.  He was charged with disorderly conduct and parading without a permit.  All charges against STEPHEN KENT JUSICK have been dismissed in their entirety.

67.     Plaintiff ARIES DE LA CRUZ was released after approximately 20 hours in custody. He was charged with disorderly conduct.  All charges against ARIES DE LA CRUZ have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

68.     Plaintiff JUSTIN TAYLOR was released after approximately 26 hours in custody.  He was charged with disorderly conduct and parading without a permit.  All charges against ARIES DE LA CRUZ have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

69.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK evinced through their statements and actions an attitude of contempt toward those who demonstrated during the RNC, and toward those thought to be assisting or otherwise related to them, including legal observers, anarchists, medics, certain segments of the press, and the National Lawyers Guild.  Officials of the CITY OF NEW YORK attempted to create a climate of fear relative to the activities of demonstrators.

70.    Defendant COHEN prior to the RNC caused the NYPD to be engaged in widespread surveillance of individuals and groups expected to be demonstrating during the RNC period, and fostered and created a climate of hostility toward demonstrators, improperly conflating them with civil disobedience and/or violence and/or violent anarchism and/or terrorism.  The intelligence obtained through Defendant COHEN's RNC intelligence program formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees, including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an improperly long period of time.

71.    This  tone of hostility to demonstrators, and the resultant policies, customs, practices and usages to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC.  These statements portrayed those who chose to engage in political protest in the most negative light.  This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and

"dangerous" protestors.  This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

72.    Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of  a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

73.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating.  Lawful demonstrators, observers, or passers-by were swept up in these mass arrests and taken to Pier 57.  These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

74.    The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, including plaintiffs, and applied the parading ordinance and other laws, including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

75.    The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association.  The

CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees, including plaintiffs, in part to prevent the arrestees from exercising their rights to free speech and expression.

**FIRST CLAIM**

**DEPRIVATION OF RIGHTS UNDER THE**

**UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

76.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

77.    By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, NG, RIVERA, ALBERTSEN and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C.

§1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

78.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

79.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

80.     By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

81.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

**LIABILITY OF THE CITY OF NEW YORK**

**FOR CONSTITUTIONAL VIOLATIONS**

82.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

83.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

84.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

85.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-

arraignment detention for punitive and deterrent purposes.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC.  The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

86.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

87.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false arrests at the slightest subjective perception of uncooperativeness by civilians or that the police were not in, or may soon not be in, full control of a situation, whether or not their perceived lack of control or a perceived lack of cooperativeness in fact did not indicate the violation of any law.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

88.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of not issuing summonses to RNC arrestees, and of not issuing Desk Appearance Tickets to RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

89.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of fingerprinting of all RNC arrestees and of not ensuring that those fingerprints and other personal information were either destroyed or returned upon dismissal of charges against RNC arrestees.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

90.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of making false statements concerning RNC arrestees and the circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn Criminal Court charging instruments, and at criminal trials.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

91.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons,

including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

92.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

93.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

94.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an

unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and

unequally applying the parading ordinance and other laws, including the statute

prohibiting disorderly conduct.  Examples of these unconstitutional, discriminatory and

unequal policies, practices, customs, and usages are: (a) the enforcement of the

unconstitutional parading statute, New York City Administrative Code section 10.110,

Parading Without a Permit; (b) the application of the Parading Without a Permit statute to

people walking on the sidewalk; (c) enforcement of the unconstitutional Disorderly

Conduct statute, Penal Law section 240.20(5) (obstructing pedestrian traffic); (d) the

application of the Disorderly Conduct statute, subsection 5, to people walking on the

sidewalk; (e) enforcement of the Disorderly Conduct statute, Penal Law section

240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an

arrestee was congregated with others and/or without having issued any dispersal orders

and/or failing to ensure that the dispersal orders were heard and/or or without giving a

sufficient opportunity for people to disperse.  These policies, practices, customs, and

usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.     As a result of the foregoing, plaintiffs were deprived of their liberty and

property, suffered bodily injury, pain and suffering, psychological and emotional injury,

great humiliation, costs and expenses, and were otherwise damaged and injured.

## **FOURTH CLAIM**

## **LIABILITY OF HUDSON RIVER PARK TRUST FOR CONSTITUTIONAL VIOLATIONS**

96.     The plaintiffs incorporate by reference the allegations set forth in all

preceding paragraphs as if fully set forth herein.

97.     At all times material to this complaint, defendant HUDSON RIVER

PARK TRUST had policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

98.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

99.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

100.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

101.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

a. Compensatory damages;

b. Punitive damages;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this court may deem appropriate and equitable.

Dated:       New York, New York
             August 29, 2007

                                        _____/S/_____
                                        JEFFREY A. ROTHMAN, Esq.
                                        (JR-0398)
                                        315 Broadway, Suite 200
                                        New York, New York 10007
                                        (212) 227-2980

                                        Attorney for plaintiffs